UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STATIONARY ENGINEERS LOCAL 39,
IUOE,

                    Petitioner,

        v.

KAISER FOUNDATION HOSPITALS,

                    Respondent.

Case No.  17-cv-03754-JCS

**ORDER GRANTING RESPONDENT'S
MOTION TO DISMISS**

Re: Dkt. No. 7

## I.      INTRODUCTION

Petitioner Stationary Engineers Local 39, IUOE ( "Local 39") brings this action against Respondent Kaiser Foundation Hospitals ( "Kaiser") seeking to vacate an arbitration award made on March 22, 2017 ("arbitration award," Pet. Ex. A, dkt. 1) concerning a dispute between the parties on the validity of filling vacant positions by modality under the applicable collective bargaining agreement ("CBA," Pet. Ex. B, dkt. 1).  Pet. (dkt. 1).  Local 39 contends that the award should be vacated on the grounds that the arbitrator exceeded his authority and the award did not properly draw its essence from the CBA.  *See* Pet.  Kaiser now moves to dismiss the Petition to Vacate, arguing that the arbitrator properly interpreted and based his decision on the language of the CBA.  Mot. (dkt. 7).  The Court held a hearing on September 1, 2017.  For the reasons detailed below, the Court GRANTS Kaiser's motion to dismiss.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II. BACKGROUND

### A. Petition to Vacate Arbitration Award and Attached Documents

#### 1. Petition and Factual Allegations

On June 29, 2017, Local 39 filed a Petition to Vacate Arbitration Award against Kaiser under the Labor Management Relations Act. Pet. ¶ 1; 29 U.S.C. § 185. Local 39 contends that the arbitration award should be vacated because the arbitrator exceeded his authority and the award itself fails to draw its essence from the CBA. Pet. ¶ 8. Local 39 seeks an order vacating the arbitration award, an award of attorneys' fees and costs, and further relief as the Court deems proper. *Id.* at 3.

In the petition, Local 39 describes the relevant factual background as follows. Local 39, a "bargaining unit of stationary engineers that ensure the proper maintenance of Kaiser's various facilities and medical equipment throughout the state," and Kaiser, a healthcare provider that operates numerous healthcare institutions throughout California, have been signatories to a series of collective bargaining agreements for decades. *Id.* ¶ 6. In and around 2015, a dispute arose between the parties "regarding the posting of shifts for biomedical engineers employed at Kaiser's facilities throughout the state." *Id.* "Prior to 2015, the biomedical engineers worked exclusively on the dayshift," but "[a]fter the Collective Bargaining Agreement was renegotiated in 2015, the parties agreed that a biomedical engineer could be scheduled for swing and graveyard shifts." *Id.* In 2015, the parties signed the CBA, wherein "the parties agreed that '[s]eniority will be applicable on a classification basis.'" *Id.* (quoting CBA ¶ 58). Later in 2015, Kaiser "bid the newly open positions on the day and graveyard shifts on a basis other than classifications" when it "relied on subspecialties referred to as 'modalities'" to bid the openings. *Id.* ¶ 6. Local 39 then "filed a grievance challenging Kaiser's bid process," initiating arbitration proceedings that resulted in the arbitration award denying the grievance. *Id.* ¶ 7; *see* Arbitration Award. Local 39 contends that this arbitration award "ignored the clear and unambiguous terms of the Collective Bargaining Agreement, and instead relied upon what it deemed the parties' past practice, notwithstanding the fact that that practice had been changed in the parties' 2015 negotiations." *Id.*

On the basis of these factual allegations, Local 39 urges this Court to vacate the arbitration

2

award. Local 39 contends that "[v]acation of an arbitration award is warranted, *inter alia*, when an arbitrator exceeds his authority, and when the award fails to draw its essence from the agreement." *Id.* ¶ 8. Local 39 argues that the arbitration award in this matter "both exceeded [the arbitrator's] authority and failed to draw its essence from the Agreement, because the Arbitration Award is not based on the terms of the Collective Bargaining Agreement, but instead on a purported past practice that had been changed by the parties' agreement." *Id.* As part of its petition, Local 39 attaches a copy of the CBA as well as the arbitration award it seeks to vacate. *See generally* CBA; Arbitration Award.

### 2. 2015 CBA Agreement

Local 39 attaches to its petition a copy of the relevant CBA, effective September 18, 2015 through September 17, 2018, which it contends Kaiser breached by bidding openings by modality instead of classification. *See* CBA. The CBA covers various topics regarding work at Kaiser, including, *inter alia*, discrimination in the workplace, wages, hours of work and overtime, vacations and holidays, healthcare, and arbitration procedures for settling disputes. *See generally id.* The CBA also includes role-specific provisions for the Chief Engineer, Assistant Chief Engineer, Engineers, Temporary Engineer, and Utility Engineer positions at Kaiser, detailing the responsibilities of each position as well as the limitations on how many of each position can or must be hired at a given facility. *See id.* ¶¶ 13–23. In addition to these positions, the CBA delineates and details positions within the "Biomedical Engineering" department at Kaiser, including specific provisions describing the Senior Biomedical Engineer, Lead Biomedical Engineer, Biomedical Engineer, and Biomedical Assistant positions. *Id.* ¶ 24. In relevant part, the CBA describes the position of "Biomedical Engineer" as follows:

> 24. . . .
>
> 3. The Biomedical Engineer shall spend the majority of his/her time planning, installing, training, maintaining and repairing sophisticated medical equipment and systems utilized in the **diagnosis, treatment and monitoring of patients within any one of the identified modalities** with clinical technology. The Employer shall have the right to establish the qualifications to be required of the employee or employees who fill this position.

*Id.* ¶ 24.3 (emphasis added).

The current dispute largely pertains to the provisions of the CBA concerning seniority by classification, the procedures for posting and filling vacancies to positions or shifts at Kaiser facilities, and rules regarding filling of shifts or schedules created in the event of expansion beyond normal workday or work weeks. *See id.* ¶¶ 50–68. The CBA describes seniority for Kaiser as follows:

> 58. Seniority shall not be applicable during a ninety (90) day period following the date of most recent employment, but upon completion of such ninety (90) day period, seniority shall relate back to the employee's most recent date of employment. **Seniority will be applicable on a classification basis**.

*Id.* ¶ 58 (emphasis added).

Three areas of the CBA list or detail the relevant "classifications" at Kaiser. First, in Appendix I of the CBA regarding wage rates "for the specified classifications," the CBA directly refers to nine distinct classifications of stationary and biomedical engineers at Kaiser: Chief Engineer, Assistant Chief Engineer, Apprentice Stationary Engineer, Utility Engineer, Senior Biomedical Engineer, Lead Biomedical Engineer, Biomedical Engineer, Biomedical Assistant, and Apprentice Biomedical Engineer. *Id.* app. I. Second, the positions detailed in Article II of the CBA, while not explicitly referred to as "classifications," largely mirror the titles of classifications in Appendix I, describing the roles and responsibilities of those classifications.[2] *Id.* ¶¶ 13–24. These descriptions of various positions at Kaiser immediately follow a section in the CBA requiring notification to Local 39 "of the number, qualifications, and classifications of Employees needed [for vacancies] so the Union may have a reasonable opportunity to refer applicants for the vacancies to be filled" further indicating that the positions discussed are meant to refer to classifications. *Id.* ¶ 12.a. Third, the CBA explicitly limits the arbitrator's decisions regarding classifications, noting "the decision of the arbitrator, however, is limited to changes in the

---

[2] Article II of the CBA includes descriptions of the Chief Engineer, Assistant Chief Engineer, Engineers, Temporary Engineer, Utility Engineer, Senior Biomedical Engineer, Lead Biomedical Engineer, Biomedical Engineer, and Biomedical Assistant positions. CBA ¶¶ 13–24. With the exception of including "Temporary Engineer," which was not in Appendix I, and Appendix I's inclusion of "Apprentice" engineers for both stationary and biomedical engineers, the framework of the listed positions in Article II and the classifications in Appendix I are identical. *See id.* ¶¶ 13–24 & app. I.

classification of a position within the existing wage schedule," further supporting the notion that the positions listed within Appendix I, in conjunction with the language from Article II detailing the roles and responsibilities of positions, describe the relevant "classifications" for purposes of the CBA. *Id.* ¶ 137; *see id.* ¶¶ 13–24 & app. I.

In addition to these classification provisions, the CBA details how Kaiser should bid and fill vacancies on shifts, fill positions created by expanding to a 24-hour workday, and fill positional vacancies at individual facilities. *Id.* ¶¶ 54, 61, 65. The CBA details the procedures for filling vacancies on shifts as follows:

> In filling permanent vacancies on shifts, **seniority will prevail**:
>
> 1. **Provided the employee has the ability and qualifications to perform the work satisfactorily**, and;
>
> 2. Provided further that the Employer can first obtain a replacement of the employee seeking to change shift in accordance with this paragraph who, in the sole discretion of the Employer, is capable of filling the vacancy created by the shift change.

*Id.* ¶ 61 (emphasis added). The CBA details the process for filling newly available shifts or schedules created in the event of expansion to a twenty-four hour workday as follows:

> If, in the interest of efficient operations within Clinical Technology, it becomes necessary to change or establish schedules covering a twenty-four hour work day, departing from the normal workday (0800-1630) or workweek (Mon.-Fri.), the Employer shall meet and confer with the Union to arrange mutually satisfactory schedules. It is the intention that such new schedules shall be permanent and **shall be filled following the seniority bidding process in this Agreement first**, then by newly hired journey level Biomedical Engineers.

*Id.* ¶ 54 (emphasis added). For general positional vacancies at individual Kaiser facilities, the CBA dictates a facility-specific process for bidding as follows:

> Position vacancies within the Facility and associated Medical Offices (see Appendix II) **shall be bid by seniority within the facility, and thereafter, the remaining vacant positions shall be posted at all facilities** via the Employer's electronic posting system for (7) seven calendar days for those Engineers outside the facility.

*Id.* ¶ 65 (emphasis added). The CBA also notes that "[q]ualifications for the vacant position shall appear on the position posting and shall be based on job requirements." *Id.*

5

The CBA also includes several relevant provisions regarding the resolution of grievances under the CBA. *See id.* ¶¶ 131, 133, 135, 139. In the event of a dispute, the CBA dictates that an adjustment board "composed of two (2) representatives of the Employer and two (2) representatives of the Union" will be the first entity to review the matter. *Id.* ¶ 131. After review, the adjustment board will attempt to come to a majority decision, which would be "final and binding upon both parties." *Id.* ¶ 133. If the adjustment board fails to resolve the grievance, the grieving party then "may appeal the grievance to arbitration" if it so chooses. *Id.* ¶ 135. The CBA concludes with an integration, or "zipper," clause[3] stating, "[t]he express provision of this Agreement constitute the complete, fully bargained for Collective Bargaining Agreement which shall prevail between the Employer and the Union with respect to wages, hours of work, and conditions of employment." *Id.* ¶ 139.

### 3. Arbitration Decision

Arbitrator Robert M. Hirsch (the "arbitrator") issued the subject arbitration award on March 22, 2017 denying Local 39's grievance regarding the filling of vacant biomedical engineering positions. *See generally* Arbitration Award. By stipulation, the parties defined the issue to be resolved through arbitration as follows: "Did the Employer violate the applicable CBA when it filled biomed[ical engineering] positions by modality in 2016, and if so, what is the appropriate remedy?" *Id.* at 2. The arbitrator concluded that "the Employer did not violate the CBA when it filled the vacant biomed[ical] engineering positions in 2016," and denied Local 39's grievance. *Id.* at 6, 8.

The arbitrator began his decision by citing relevant language from the CBA and summarizing relevant factual background material. *Id.* at 2–6. In framing the "relevant contract language" from the CBA, the arbitrator cited to Article II language concerning the roles and responsibilities of biomedical engineers, CBA ¶ 24.3, procedures for filling positions created by the implementation of a 24-hour workday, CBA ¶ 54, language defining "seniority," CBA ¶ 58,

---

[3] In its Opposition, Local 39 refers to the CBA's integration clause as a "zipper" clause, though there appears to be no substantive difference between the terms. *See* Opp'n at 7. Accordingly, this order refers to these terms interchangeably.

United States District Court
Northern District of California

procedures for filling permanent vacancies on shits, CBA ¶ 61, and relevant provisions regarding positional vacancies at facilities, CBA ¶ 65. Arbitration Award at 2–3. The arbitrator also described Kaiser's past practice of grouping biomedical engineers into distinct modalities of subspecialties which "break out into nine classifications,"[4] and evidence of over "20 years of position postings classified by modality" prior to CBA's effective date. Arbitration Award at 4. While the arbitrator acknowledged that "the CBA does not define the modalities," he pointed out that "they are referenced in the labor agreement." *Id.* (referencing CBA ¶ 24). The arbitrator emphasized that prior to the CBA, "[f]or years, decades even, all biomedical engineers at Kaiser worked day shifts," until the current CBA went into effect in 2015 to permit 24-hour workdays. *Id.* at 5. According to the arbitrator, this expansion to around-the-clock shifts "required Kaiser to post a new schedule and review employee bids for the positions," which it did by processing bids "from engineers it considered qualified within a particular modality" prior to utilizing seniority. *Id.*

The arbitrator then began his analysis of the dispute by emphasizing the "significant role" past practices can play in "helping us understand the intent of the bargaining powers." *Id.* at 6. Based in part on past practices, the arbitrator rejected Local 39's arguments regarding classification-based bidding, finding that Local 39 "seizes on a single phrase in the CBA, 'seniority will be applicable on a classification basis' to support its grievance." *Id.* (quoting CBA ¶ 58). The arbitrator acknowledged that "[i]f this were the only provision of relevance, the Union would have a strong case to make—biotech engineers would clearly be entitled to bid on open biotech engineer positions without regard to training and/or experience." *Id.* at 6. The arbitrator noted, however, that three additional considerations—"history, additional contract language, and reason"—warrant a denial of Local 39's grievance. *See id.*

---

[4] In his award, the arbitrator found that the "modalities break out into nine classifications: 1. General Instrumentation (bedside equipment), 2. Clinical Laboratory (urinalysis machines), 3. Clinical Systems Integration (picture archiving/computed radiology), 4. Computed Tomography/Magnetic Resonance (CT scans and MRI machines), 5. Ophthalmology/Surgical Lasers (Candela lasers and Eye Care PACS), 6. Nuclear Medicine (PET scans, Gamma Cameras, Spect CTs), 7. Respiratory Therapy/Anesthesia (ventilators/anesthesia machines), 8. Diagnostic Ultrasound (ultrasound equipment), and 9. X-ray (x-ray equipment)." Arbitration Award at 4.

First, the arbitrator discussed the past practices of the parties, noting that "[t]he Employer's practice for more than twenty years has been to offer the biotech engineering positions to qualified individuals, based upon the modality involved and the applicant's qualifications." *Id.* In the "[m]ore than 200 position postings submitted into evidence" during the arbitration proceedings, the arbitrator found that while the job postings were "often identified as being within the 'Biomedical Engineering' Department," the postings also additionally "carried specific qualifications, which matched the various modalities." *Id.* The arbitrator also noted that "a posting . . . always indicated the experience required and particular equipment at issue." *Id.* at 6–7. The arbitrator found that "[n]othing presented to this Arbitrator at the hearing in this matter, suggested that the parties, in negotiating a new labor agreement in 2015, intended to disrupt this past practice." *Id.* at 7. The arbitrator emphasized that "witnesses for both sides indicated that the method of bidding for positions by modality was not specifically discussed during collective bargaining in 2015," as further evidence that the CBA did not purport to address or disrupt this past practice. *Id.*

Second, the arbitrator found that the CBA itself "unequivocally gives the Employer the right to consider the employee's qualifications when filling vacant positions," *id.* at 7, as demonstrated by the provision, "In filling permanent vacancies on shifts, seniority will prevail: 1) **Provided the employee has the ability and qualifications to perform the work satisfactorily**." CBA ¶ 61 (emphasis added). The arbitrator explained that this provision shows that "Kaiser maintains the right to fill positions with only those individuals who are qualified to perform the work." Arbitration Award at 7. The arbitrator found that "[h]ere, that means only the biomed[ical] engineers qualified to work **within a particular modality** are entitled to be considered for an open position." *Id.* (emphasis added). The arbitrator explained that "[s]eniority obviously remains an important factor, but not until qualified engineers are competing for an open position." *Id.*

Third, the arbitrator invoked "reason" as a factor in his decision, stating that "forcing Kaiser to fill vacant biomed[ical] engineering positions with engineers who are not qualified to actually work at those positions until undergoing extensive and expensive training, appears

unreasonable and harsh." *Id.* at 7.  The arbitrator found Local 39's suggestion "that Kaiser would have to train any engineer who bid into a position he could not qualify to work," to be a "wholly unworkable position," observing that "[n]othing in this record suggests that this was contemplated by the bargaining parties in 2015." *Id.* at 7–8.  Accordingly, the arbitrator concluded that "Kaiser complied with the CBA when it filled biomed[ical] engineering positions in 2016," and denied Local 39's grievance.  *Id.* at 8.

### B.    The Parties' Arguments

#### 1.    Kaiser's Motion to Dismiss

Kaiser begins its Motion to Dismiss by emphasizing to this Court that "[t]he finality of arbitration awards under the Labor Management Relations Act is sacrosanct," requiring a "nearly unparalleled degree of deference," to the award that may only be disrupted in a few limited and inapplicable scenarios.  Mot. at 3 (quoting *Stead Motors of Walnut Creek v. Auto Machinists Lodge No. 1173*, 886 F.2d 1200, 1204–05 (9th Cir. 1989) (en banc)).  Kaiser contends that Local 39 initiated the current proceedings "for no reason other than its unhappiness with the outcome," and that "simple disagreement with the outcome is not a basis for vacating the award." *Id.*  Due to the heightened deferential standard, the inapplicability of narrow exceptions, and the arbitrator's proper review of evidence to weigh and interpret the relevant contractual provisions, Kaiser contends that the petition to vacate the arbitration award is without merit and should be dismissed. *Id.* at 3–4.

Kaiser states that the Ninth Circuit has articulated only four instances where a court may disturb an arbitration award—"where: (1) the award does not 'draw its essence' from the collective bargaining agreement; (2) 'the arbitrator exceeds the boundaries of the issues submitted to him'; (3) the award violates public policy; or (4) the award is obtained by fraud."  *Id.* at 7 (quoting *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 529 (9th Cir. 2016)).  Kaiser contends that the latter two instances involving public policy or fraud are on their face inapplicable because Local 39 did not allege these factors in its petition.  *Id.*  For the former two instances, which Local 39 did allege in its petition, Kaiser contends that "as is evident in the award itself, the arbitrator has neither exceeded his authority nor neglected to derive his decision

9

from the essence of the collective bargaining agreement." *Id.*

With respect to Local 39's argument that the arbitrator exceeded his authority in issuing the award, Kaiser contends that the arbitrator's actions were well within his authority as defined by the CBA and fell within the scope of the stipulated issue at arbitration. *Id.*; *see* Arbitration Award at 2. Kaiser contends that the issue before the arbitrator of whether Kaiser "violate[d] the applicable CBA when it filled biomed positions by modality in 2016" was "exactly the issue that the arbitrator decided," claiming that "[t]here is nothing in the statement of the issue or in the CBA itself that prohibits the arbitrator from considering past practice in interpreting the applicable language or from denying the grievance if he concluded the Union had not proven its case." Mot. at 7–8 (quoting Arbitration Award at 2). In support of this claim, Kaiser notes that last year the Ninth Circuit held that "an arbitrator may interpret collective bargaining agreements 'in light of the past practices of the parties.'" *Id.* at 8 (quoting *Drywall Dynamics*, 823 F.3d at 533). Here, Kaiser claims the arbitrator "was charged with interpreting the meaning of, and interplay among, several different contractual provisions," including "qualifications" for various positions and "seniority" for bidding for shifts. *Id.* (referencing Arbitration Award at 2–3, 6–7). Kaiser contends that "[g]iven the possible interpretations and balancing of these interest, the arbitrator was well within his authority to consider the past practices of the parties." *Id.*

Kaiser similarly contends that there is no basis for Local 39's claims that the arbitrator failed to derive his decision from the essence of the CBA, arguing instead that the arbitration award "draws its essence from the collective bargaining agreement as required by *Enterprise Wheel.*" *Id.* (capitalization altered throughout) (referencing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960)). Kaiser argues that the Court's inquiry regarding whether an award "draws its essence" from a CBA is limited in that "a court may not look at whether the arbitrator interpreted the language correctly, just that he considered it at all." *Id.* Relatedly, Kaiser points out that the Ninth Circuit has recently held that the relevant inquiry is not whether or not the arbitrator's interpretation is "plausible," but instead "'whether he made any interpretation or application of the agreement at all. If so, the court's inquiry ends.'" *Id.* (quoting *Drywall Dynamics*, 823 F.3d at 531–32). Because the arbitrator in the present matter based his

award "squarely and explicitly on a provision that 'unequivocally gives the Employer the right to consider an employee's qualifications when filling vacant positions,' as well as several other provisions of the CBA," Kaiser suggests the Court's inquiry should "end there" as the arbitrator's analysis "draws its essence" from the CBA. *Id.* at 9 (quoting Arbitration Award at 7) (citing *Drywall Dynamics, Inc.*, 823 F.3d at 531–32). Kaiser additionally contends that "arbitrators are expected to bring their industry expertise to the task of interpreting the contract, including considerations of industry standards and past practice," and that an award which relies in part on these industry standards and past practices may still "draws its essence" from the CBA. *Id.* at 8. (citing *SFIC Props., Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94, Local Lodge 311*, 103 F.3d 923, 925 (9th Cir. 1996)).

### 2. Local 39's Opposition

In its opposition, Local 39 contests Kaiser's characterization of the petition, arguing that the arbitration award should be vacated in light of the arbitrator's failure to interpret or construct the plain language of the CBA. *See generally* Opp'n (dkt. 15). While Local 39 does not argue fraud or public policy grounds for vacating the arbitration award, it contends that the current motion to dismiss should be denied because the subject petition "clearly shows that (1) the Arbitrator exceeded his authority under the arbitration agreement, and (2) the Arbitration Award fails to draw its essence from the CBA." *Id.* at 1. While Local 39 acknowledges the high degree of deference courts generally give to labor arbitration awards, it argues this deference does not allow an arbitrator to "ignore the plain language of collective bargaining agreements in favor of their own sense of industrial justice," which Local 39 contends the arbitrator did in his denial of Local 39's grievance. *Id.*

First, Local 39 contends that the arbitrator "exceeded his authority by ignoring the plain language of the CBA, which effectively modified the CBA despite a clear prohibition from adding to or modifying the CBA." *Id.* at 4. Local 39 contends that the arbitrator violated the terms of the CBA when he "subtracted from the agreement seniority is applicable on a classification basis, and [he] added terms to the CBA that subspecialties trump classifications," such that the arbitration award "permits Kaiser now to post openings not by classification but by subspecialties that are

11

nowhere to be found in the CBA." *Id.* at 6. Local 39 further contends that the arbitrator relied upon the provision, "[p]rovided the employee has the ability and qualifications to perform the work satisfactorily," CBA ¶ 61.1, which is inapplicable to the current issue because "[t]he instant grievance was about the Employer improperly posting open positions not by classification; this was not a grievance about who the Employer ultimately selected for the position." Opp'n at 6.

Local 39 contends that the matter at hand is similar to a recent case from the Central District of California, where the court held that the "arbitrator's assigned meaning to the CBA provision is 'so at odds with the clear text of the agreement'" that the arbitrator exceeded his authority, making vacatur the proper remedy. *Id.* at 4 (quoting *L.A. Times Commc'ns v. Graphic Commc'ns Conference Int'l Bhd. of Teamsters*, No. CV 13-06192 GRK, 2013 WL 12139835, at *6–7 (C.D. Cal. Oct. 8, 2013)). Local 39 contends that like the court in *Los Angeles Times Communications,* this Court should find that the existence of a zipper clause preventing the arbitrator from "adding to, modifying, or subtracting from, the terms of the Agreement," as well as the disconnect between the plain meaning of the CBA and the award's adopted language, indicate that the arbitrator exceeded his authority. *Id.* at 5–6 (quoting CBA ¶ 137).

Local 39 also analogizes the current matter to a recent Second Circuit case where the court vacated an arbitration award that had ordered an employer to reinstate an employee despite the arbitrator's finding in those proceedings that the employer had valid grounds for termination. *Id.* at 6–7 (citing *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 526–27 (2d Cir. 2005)). Local 39 emphasizes that in *187 Concourse Associates*, the Second Circuit held that there was "nothing further to be done" following a finding of just-cause grounds for termination, such that "[t]he arbitrator had no authority under the CBA or the submission to fashion an alternative remedy." *Id.* at 7 (quoting *187 Concourse Assocs.*, 399 F.3d at 527). As in *187 Concourse Associates*, Local 39 argues that the arbitrator here exceeded his authority by "mak[ing] a finding in the award and then issu[ing] a remedy contrary to that finding." *Id.* (citing *187 Concourse Assocs.*, 399 F.3d at 527)). Local 39 contends that the arbitrator's findings regarding the CBA's provision, "seniority will be applicable on a classification basis," CBA ¶ 58, similarly limited the arbitrator's authority to adopt alternative remedies. Opp'n at 7. Specifically, Local 39 contends that the arbitrator's finding that

12

"if this were the only provision of relevance . . . biotech engineers would clearly be entitled to bid on open biotech engineer positions without regard to training and/or experience" to prevent the arbitrator from fashioning remedies alternative to this reading of that provision. *Id.* (quoting Arbitration Award at 6). Local 39 argues that the arbitrator's attempts to appeal to "reason," and "history" to be irrelevant and/or outside the scope of the grievance because "the newly added language dictated the outcome of the arbitration, which the Arbitrator ignored thereby exceeding his authority." *Id.*

Second, with respect to whether the award "draws its essence" from the CBA, Local 39 contends that the arbitrator's implementation of past practices and prioritization of the "law of the shop" industry norms was improper because the relevant language was "clear and unambiguous" and the "zipper clause" in the CBA prohibits modifications or additions to the agreement by the arbitrator. *Id.* at 7–8 (citing *Anheuser-Busch, Inc. v. Local Union No. 744*, 280 F.3d 1133, 1138–41 (7th Cir. 2001), *cert denied* 537 U.S. 885 (2002)). Local 39 urges this Court to follow the ruling in *Anheuser-Busch*, contending the Seventh Circuit "ultimately ruled that the arbitration did not draw its essence from the collective bargaining agreement because the contract language was clear and unambiguous, which was not in dispute, and '[t]he conduct of the parties is absolutely irrelevant in situations like this involving a dual zipper clause-arbitration clause.'" *Id.* at 8 (quoting *Anheuser-Busch*, 280 F.3d at 1141) (citing *Leed Architectural Prods., Inc. v. United Steelworkers of Am.*, 916 F.2d 63, 67 (2d Cir. 1990)). As in *Anheuser-Busch*, Local 39 contends that the arbitration award here "similarly fails to draw its essence from the CBA because there was no construction of its terms," and the "newly added plain language on seniority by classification was clear and unambiguous." *Id.* Local 39 also notes that the parties here "negotiated new 'seniority-by-classification' language that superseded the 'past practice' on which the Arbitrator principally relies," and that in light of the zipper and arbitration clauses present in the CBA, "it was absolutely irrelevant for the Arbitrator to have relied on a superseded past practice." *Id.* at 9. On this basis, Local 39 urges this Court deny the motion to dismiss. *Id.*

### 3. Kaiser's Reply

In its reply, Kaiser emphasizes three main points: (1) that there is enough evidence before

13

the Court to decide the case at this stage of litigation, (2) that the award properly draws its essence from the CBA, and (3) that the arbitrator did not exceed his authority under the CBA in coming to his decision. Reply at 1–2. Because the Court has adequate evidence on record to determine that the arbitrator acted properly in coming to his decision, Kaiser urges the Court to dismiss the underlying petition. *Id.* at 3.

First, Kaiser notes that while courts generally "disfavor motions to dismiss because they require courts to rule before receiving any evidence," this principle "does not apply here where the Union has attached to its complaint, the only two pieces of evidence relevant to the dispute – the arbitrator's decision and the collective bargaining agreement." *Id.* at 1. (citing *Bonnichsen v. U.S. Dep't of the Army*, 969 F. Supp. 614, 619 (D. Or. 1997) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1984))). According to Kaiser, "[b]ecause the only issues before the Court are whether the Arbitrator exceeded his authority (as set forth in the collective bargaining agreement) and whether he based his decision in some way on that agreement, the Court needs no further evidence to rule on this frivolous petition." *Id.*.

Second, Kaiser reiterates that this Court's analysis as to whether the award "draws its essence" from the CBA is not a substantive evaluation on the merits, but instead an analysis of whether the arbitrator's decision is "derived from the language of the contract." *Id.* at 2 (quoting *SFIC Props.*, 103 F.3d at 925). If the award is "derived from the language of the contract," Kaiser contends that "[t]he Court must uphold Arbitrator Hirsch's decision even if it was based on a complete misreading of the contract." *Id.* Kaiser explains that "to succeed on its petition, the Union must establish that Arbitrator Hirsch completely ignored the CBA," which Kaiser contends Local 39 has not alleged let alone established. *Id.* Instead, Kaiser contends that Local 39 merely argued that "Arbitrator Hirsch exceeded his authority because he cited **different** contractual language **in the** CBA than the language on which the Union hung its entire argument." *Id.* (citing Opp'n at 7). Kaiser notes that "[n]othing prevented Arbitrator Hirsch from interpreting any relevant language in the CBA – regardless of whether the Union hoped that he would focus exclusively on the Union's preferred phrase." *Id.* Further, Kaiser argues that "the Arbitrator **did** consider the language on which the Union relied and rejected the argument based on it." *Id.*

14

Specifically, Kaiser contends that the arbitrator's finding that "[t]he Union[] seizes on a single phrase in the CBA, 'seniority will be applicable on a classification basis' to support is grievance," Arbitration Award at 6 (quoting CBA ¶ 58), and the arbitrator's subsequent rejection of this "preferred phrase" on the basis of "history, additional contract language, and reason," *id.*, amount to a proper consideration of that provision. Reply at 2. Accordingly, Kaiser contends that the arbitrator's consideration of even purportedly inapplicable portions of the CBA amounts to "deriv[ing his decision] from the language of the contract" and thus warrants a finding that the award "draws its essence" from the CBA. *Id.*; *see SFIC Props.*, 103 F.3d at 925.

Third, Kaiser reiterates its contention that "the arbitrator did not exceed his authority under the CBA," emphasizing that the arbitrator's invocation of past practices between parties was proper despite Local 39's conflicting contentions. *Id.* at 2–3 (capitalization altered). Kaiser contends that in "any dispute involving the interpretation of a contract, arbitrators resolve contract-interpretation grievances by applying the well-understood rules of contract interpretation," first by analyzing plain language, which governs where language is clear and explicit, and then by evaluating extrinsic evidence, which "can be relevant in giving effect to the parties' mutual intent at the time of contracting." *Id.* at 3 (citing Cal. Civ. Code §§ 1636, 1638, 1647). Kaiser also notes that one of the cases cited to by Local 39 in its opposition, *Los Angeles Times Communications*, is inapplicable to the case at hand because the binding agreement in that case explicitly barred the arbitrator from considering or referencing past practices and customs—language that is not in the CBA in this case. *Id.* (citing *L.A. Times Commc'ns,* 2013 WL 12139835). Kaiser instead contends that the arbitrator "drew on several provisions of the CBA to support his conclusion," and in this process "considered the parties' past practice, and from that evidence reached conclusions about the parties' intent," in order to "reconcile what might otherwise be contradictory language." *Id.* Kaiser reiterates its position that this analysis "was completely proper," and, "[a]s a result, the petition must be dismissed." *Id.*

## III.    ANALYSIS

### A.    Legal Standard for Motions to Dismiss

A complaint may be dismissed for failure to state a claim on which relief can be granted

15

under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the pleading and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). When a written instrument is attached to a pleading, "[a] copy of a written instrument that is an exhibit to a pleading is a part of that pleading for all purposes." Fed. R. Civ. P. 10(c).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

**B.  Legal Standard for Petitions to Vacate Arbitration Awards**

When reviewing labor arbitration awards, courts "afford a 'nearly unparalleled degree of

16

deference' to the arbitrator's decision." *Drywall Dynamics*, 823 F.3d at 530 (quoting *Stead Motors*, 886 F.2d at 1204–05). This high degree of deference is due to "the centrality of the arbitration process to stable collective bargaining relationships," *id.*, as well as the notion that "[s]ince the labor arbitrator is designed to function in essence as the parties' surrogate, he cannot 'misinterpret' a collective bargaining agreement." *Stead Motors*, 886 F.2d at 1205. Courts are generally prohibited from looking to the merits of the arbitration decision, and "a court should not reject an award on the ground that the arbitrator misread the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (citing *Enter. Wheel*, 363 U.S. at 599). While highly deferential to labor arbitration awards, courts may vacate these awards when the arbitrator did not properly "look at and construe the contract." *See Drywall Dynamics*, 823 F.3d at 530. The Ninth Circuit has delineated the following four instances that warrant vacating a labor arbitration award:

> (1) when the award does not draw its essence from the collective bargaining and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud.

*Id.* (citing *S. Cal. Gas Co. v. Util. Workers Union of Am., Local 132, AFL-CIO*, 265 F.3d 787, 792–93 (9th Cir. 2001)).

An arbitrator exceeds his authority when he goes beyond the issues submitted to him by the parties. "The scope of the arbitrator's authority is limited to the issue submitted to him by the parties." *Sunshine Mining Co. v. United Steelworkers of Am., AFL-CIO, CLC*, 823 F.2d 1289, 1294 (9th Cir. 1987) (citing *Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 302 (3d Cir. 1982)). In analyzing whether an arbitrator exceeded this authority, the arbitrator's opinion must be upheld if the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority." *Misco*, 484 U.S. at 38. In analyzing whether or not an arbitrator acted within the scope of the issues, courts "treat the arbitrator's interpretation of the scope of the issues submitted to him with great deference." *Federated Dep't Stores v. United Foods & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1498 (9th Cir. 1990). However, "an arbitrator has no authority to ignore the plain language of a collective bargaining

17

agreement that limits the scope of his authority." *Haw. Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1181 (9th Cir. 2001)).

An arbitration award "draws its essence" from a bargaining agreement "when it is based on language in the CBA." *SFIC Props.*, 103 F.3d at 924 (citing *Stead Motors*, 886 F.2d at 1205 n.6). An arbitration award fails to "draw its essence" from a bargaining agreement when "the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice.'" *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *Enter. Wheel*, 363 U.S. at 597). This exception is narrow and courts generally reserve findings that an award failed to draw its essence from bargaining agreement for "those egregious cases in which a court determines that the arbitrator's award ignored the plain language of the contract, that he manifestly disregarded the contours of the bargain expressed in outline by the collective bargaining agreement." *Stead Motors*, 886 F.2d at 1205 n.6 (internal citations omitted). An arbitrator generally "is 'not confined to the express terms of the contract' but may also consider the 'industrial common law' which 'is equally a part of the collective bargaining agreement although not express in it.'" *SFIC Props.*, 103 F.3d at 925 (quoting *Federated Dep't Stores*, 901 F.2d at 1497).

**C.    Application**

As detailed above, courts are highly deferential to arbitration awards and can only vacate an arbitrator's award in four instances—(1) where the award fails to "draw its essence" from the applicable collective bargaining agreement, (2) where an arbitrator exceeded the boundaries of the issues submitted to him, (3) when the award is contrary to public policy, and (4) when the award is procured by fraud. *See Drywall Dynamics*, 823 F.3d at 530. Local 39 did not base its petition to vacate on fraud or public policy grounds. *See* Pet. Instead, Local 39 contends that the arbitrator exceeded his authority and the arbitration award fails to draw its essence from the CBA. *See* Pet. at 3.

**1.    The Arbitrator Did Not Exceed His Authority**

The stipulated issue at arbitration was "Did the Employer violate the applicable CBA when it filled biomed positions by modality in 2016, and if so, what is the appropriate remedy?"

Arbitration Award at 2.  In addition to the terms of the CBA, the arbitrator considered Kaiser's past practice of hiring by modality in deciding this issue.  Local 39 contends that the zipper clause in the CBA, which prevents "adding to, modifying, or subtracting from, the terms of the agreement," and the unambiguous language in the CBA regarding seniority prohibit the arbitrator from considering or referencing past practice altogether.  Opp'n at 6 (quoting CBA ¶ 137).  In relevant part, Local 39 argues that "[i]nstead of deciding the grievance on the plain language of the CBA, the Arbitrator improperly looked to a past practice that predated and was nullified by the provision that 'seniority will be applicable on a classification basis.'"  *Id.* (quoting CBA ¶ 58).

Given that the dispute itself concerns the validity of modality-based hiring and that the CBA directly references modalities for Biomedical Engineers,[5] the Court finds no error on the part of the arbitrator in considering and reviewing Kaiser's past practice of hiring by modality.  In coming to this opinion, the Court acknowledges that arbitrators are to be given a great degree of deference in interpreting the scope of the issues presented before them.  *See Federated Dep't Stores*, 901 F.2d at 1498.  The Court also notes that consideration of past practices is generally valid absent language prohibiting such consideration.  *See Drywall Dynamics*, 823 F.3d at 533 ("The Adjustment Board based its decisions on the parties' agreements, both as written **and as informed by past practice**.  The district court should have deferred to the panel's interpretation rather than inquiring into its substantive merit." (emphasis added)).  While the CBA prevents addition to or modification of the CBA by the arbitrator, it does not prevent the arbitrator's consideration of past practices in analyzing and interpreting the language of the CBA.  *See* CBA ¶ 137.  Accordingly, the Court finds that the arbitrator's analysis was within the boundaries of his authority as defined by the scope of the stipulated issue, and he committed no error by considering and referencing the past practice of hiring by modality.  With respect to Local 39's other arguments that the arbitrator exceeded his authority by improperly ignoring the plain language of

---

[5] As the arbitrator points out in his award, "[a]lthough the CBA does not define the modalities, they are referenced in the labor agreement."  Arbitration Award at 4 (citing CBA ¶ 24).  In relevant part, the CBA lists that the Biomedical Engineer should spend the majority of his or her time with several tasks including "treatment and monitoring of patients **within any one of the identified modalities** with clinical technology."  CBA ¶ 24.3 (emphasis added).

the CBA, the Court finds that the arbitration award properly draws its essence from the CBA as detailed in the following section.

### 2. The Arbitration Award Draws Its Essence from the CBA

Next, the Court examines the question of whether the arbitration award adequately "draws its essence" from the CBA. As Kaiser correctly notes, this Court's analysis is not one regarding the substantive merits of the arbitrator's interpretation, but rather a "simple binary" question: "Did the arbitrator look at and construe the contract, or did he not?" *Drywall Dynamics*, 823 F.3d at 532; Mot. at 8. Because the arbitration award itself and the allegations of Local 39's petition demonstrate that the arbitrator "looked at and construed" the CBA, properly considered past practices to resolve potential contradictions or ambiguities within the CBA, and did not ignore the plain language of the contract in his analysis, the Court finds that the arbitration award draws its essence from the CBA.[6]

Local 39 contends that because the arbitration award replaced the CBA's system of hiring by classification-based seniority with hiring by modality, the arbitrator violated the integration clause in the CBA when he "subtracted from the agreement seniority is applicable on a classification basis, and [he] added terms to the CBA that subspecialties trump classifications" by upholding Kaiser's practice of filling vacancies by modality instead of classification. Opp'n at 6; CBA ¶ 137. While the Court agrees with Local 39's position that an arbitrator has no authority to ignore the plain language of the relevant collective bargaining agreement in fashioning his remedy, the arbitrator did not ignore the plain language in his arbitration award. *See* Opp'n at 4–

---

[6] Local 39 argued at the hearing that resolution of this matter would be better suited for summary judgment to allow for the consideration of additional evidence. However, Local 39 did not point to any evidence that would be necessary to the Court's decision. As the Court pointed out at argument, the pleadings—which incorporate the arbitrator's decision and the CBA—include all of the evidence from which the Court may conclude, as a matter of law, that the arbitrator did not exceed his authority and made an award which draws its essence from the CBA. The arbitration award on its face demonstrates that the arbitrator "looked at and construed" the CBA in coming to his decision, and because the Court holds that the arbitrator could in this case permissibly consider past practice as one component of that analysis, the Court finds that the consideration of additional evidence would not alter the Court's analysis. *See Drywall Dynamics*, 823 F.3d at 532. The Court agrees with Kaiser's position that "the Court needs no further evidence to decide this case." *See* Reply at 1 (capitalization altered). Local 39's allegations—viewed in conjunction with the documents attached to the petition—fail to state a plausible claim on which relief could be granted and, moreover, demonstrate that amendment would be futile.

5; *SFIC Props.*, 103 F.3d at 924 (citing *Stead Motors*, 886 F.2d at 1205 n.6). Instead, the arbitrator considered several provisions of the CBA in coming to his decision. The arbitrator considered the provision in the CBA which stated that for the filling of permanent vacancies on shifts, "seniority will prevail: 1) Provided the employee has the ability and qualifications to perform the work satisfactorily." CBA ¶ 61. The arbitrator interpreted this provision to "unequivocally give[] [Kaiser] the right to consider an employee's qualifications when filling vacant positions." Arbitration Award at 7. The arbitrator concluded that "[h]ere that means only the biomed engineers qualified to work within a particular modality are entitled to be considered for an open position." *Id.* The arbitrator also referenced the inclusion of "modalities" in the CBA, which lists "treatment and monitoring of patients **within any one of the identified modalities** with clinical technology," CBA ¶ 24.3 (emphasis added), as a requirement for the Biomedical Engineer position. Arbitration Award at 4. The arbitrator then considered relevant past practices to determine how Kaiser previously determined which employees were qualified for openings as well as the role modalities played in defining qualifications for those openings. *See* Arbitration Award at 6–7. This analysis does not amount to the egregious scenario where an arbitrator ignored the plain language of a CBA such that the arbitration award fails to draw its essence from the CBA. *See Stead Motors*, 886 F.2d at 1205 n.6.

Local 39 goes on to contend that Kaiser's motion should be denied "because there was no construction of [the CBA's] terms" in the arbitration award. Opp'n at 8. Local 39 elaborates that "[a]s in *Anheuser-Busch*, the newly added plain language on seniority by classification was clear and unambiguous," such that the arbitrator improperly "chose to look to absolutely irrelevant past practices, inapplicable contract provisions, and 'reason.'" Opp'n at 8–9 (referencing *Anheuser-Busch*, 280 F.3d 1133). The Court disagrees. In light of the CBA's language that seniority only prevails for filling positional vacancies "[p]rovided the employee has the ability and qualifications to perform the work satisfactorily," CBA ¶ 61.1, in conjunction with the CBA's incorporation of modality-specific treatment as one of the requirements for the "Biomedical Engineer" classification, CBA ¶ 24.3, the plain language was not "clear and unambiguous." The CBA does not include specific language dictating how Kaiser should take into account the ability and

qualifications of employees when filling vacancies, nor does it define or describe modality-specific requirements for Biomedical Engineer openings. *See* CBA ¶¶ 24.3, 61.1. Because the arbitrator considered past practices, additional CBA provisions, and reason to provide context for these ambiguous and potentially conflicting provisions of the CBA, the Court does not find *Anheuser-Busch* to be analogous to the facts in this case.

Finally, the Court rejects Local 39's remaining arguments regarding the arbitrator's purportedly improper interpretation of individual provisions. *See* Opp'n at 6–7. Local 39 contends that the arbitrator improperly considered the inapplicable provision that seniority will prevail "[p]rovided the employee has the ability and qualifications to perform the work satisfactorily," CBA ¶ 61.1, because "this was not a grievance about who the Employer ultimately selected for the position." Opp'n at 6. The Court disagrees, finding this language to directly relate to seniority-based bidding, as the provision limits the applicability of hiring by seniority where employees are deemed to be unqualified for the position. *See* CBA ¶ 61.1. Local 39 also argues that the arbitrator had no authority to fashion alternative remedies given his stance that "biotech engineers would clearly be entitled to bid on open biotech engineer positions without regard to training and/or experience," Arbitration Award at 6, if the **only** applicable provision were "[s]eniority will be applicable on a classification basis." CBA ¶ 58. Opp'n at 7; *see 187 Concourse Assocs.*, 399 F.3d 526–27. Local 39's position that the arbitrator is bound to adopt his own assessment that "biotech engineers would clearly be entitled to bid on open biotech engineer positions without regard to training and/or experience," Arbitration Award at 6, ignores the stated context that this provision does not exist in a vacuum in light of other relevant provisions. *See* Arbitration Award at 6.

The Court finds that the arbitrator "looked at and construed the contract" such that his analysis constituted an interpretation of the agreement. *See Drywall Dynamics*, 823 F.3d at 531–32. As detailed above, the arbitrator considered and interpreted several provisions of the CBA in coming to his decision, and properly considered past practices and industry norms to aid in his interpretation of the CBA's plain language where necessary. The Court does not find that the arbitration award falls within the "egregious cases" that ignore the plain language of the agreement

such that this Court has the authority to vacate the award.  *See Stead Motors*, 886 F.2d at 1205 n.6.

Accordingly, the Court finds that the arbitration award properly "draws its essence" from the

CBA.[7]

## IV.    CONCLUSION

For the reasons stated above, Kaiser's Motion to Dismiss is GRANTED.  The Court

dismisses this action, in its entirety, with prejudice.  The Clerk is instructed to enter judgment in

favor of Kaiser and close the file in this case.

**IT IS SO ORDERED.**

Dated: September 11, 2017

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

---

[7] Under the deferential standard for review of a labor arbitrator's decision, the Court does not
reach the substantive merits of whether the arbitrator's interpretation was correct.  If that question
were before the Court, however, the Court would find the arbitrator's interpretation to be correct
for the reasons stated in his decision.  *See* Arbitration Award at 6–8.